# IN THE COURT OF APPEALS OF IOWA

No. 15-1754
Filed March 9, 2016

**IN THE INTEREST OF R.T. Jr.,**
**Minor Child,**

**R.T., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Julie G. Trachta of Linn County Advocate. Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child, R.T. Jr.[1] He claims the State failed to prove the statutory grounds for termination, that he should be granted additional time to work toward reunification, and that termination is not in the child's best interests because the bond between father and child is strong. We affirm the juvenile court's order.

We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The three-step statutory framework governing the termination of parental rights is well established and need not be repeated here. *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010). The juvenile court issued a thorough and well-reasoned ruling terminating the father's parental rights, and we adopt the findings of fact and conclusions of law in the juvenile court's order as our own.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2013). To terminate the father's parental rights pursuant to section 232.116(1)(h), the State must prove: (1) the child is three years of age or younger; (2) the child has been adjudicated a child in need of assistance (CINA); (3) the child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months; and (4) there is clear and convincing evidence that at the present time the child cannot be returned to the custody the child's parents as provided in section 232.102. The first three elements are not in dispute here. Rather, the father's claim on appeal implicates the fourth element.

---

[1] The child's mother's parental rights were also terminated, and she does not appeal.

In regard to whether the child could be returned to the father's custody, the juvenile court found:

> [The child] is now two years old and has been in foster family care the majority of his life. His parents continue on the roller coaster that is created by addiction and untreated mental health issues . . . .
>
> [The father] has continued to maintain regular contact with [the child] and regularly attends his visits. Unfortunately, he has not been able to stabilize his life so that he could safely resume care of his child. [The father] has had multiple positive drug tests, although he has continued to deny using the substances he has tested positive for. He has acknowledged intermittent use of hydrocodone, sometimes by prescription, but he does not acknowledge that his use of prescription narcotic medication is an issue even with his history of substance abuse. [The father] has incurred criminal charges related to substance abuse, including the most recent charge of public intoxication on July 3, 2015. [The father] reluctantly agreed to return to a substance abuse treatment program in February of 2015. He attended three sessions and then refused to return after being confronted with a positive drug test for marijuana. [The father] testified that just prior to the first hearing on this petition, he scheduled an appointment with a different treatment agency, though he has not yet re-engaged in any treatment. [The father's] testimony regarding his substance abuse history, his episodes of use since [the child's] removal, and his need for ongoing treatment showed either a tremendous lack of insight or [a complete lack of] honesty.
>
> [The father's] housing continues to be through the PUSH program. His employment is intermittent and he has not demonstrated the ability to maintain a home without support from this time-limited community housing program. [The father] has continued to associate with individuals known to have substance abuse issues . . . .
>
> The Department of Human Services [(DHS)] has offered services and assistance to the family throughout the course of the [CINA] proceedings. The offered services have included parenting education, family team meetings, mental health services, substance abuse evaluations, substance abuse treatment, drug testing and supervised visitation. Additionally, the parents receive services through the Department of Corrections and housing assistance through the PUSH program. No sustained progress has been made in addressing the issues which led to the child's removal. The parents have been given more than ample time to address their adult issues and demonstrate that they could provide a safe, stable, drug free home for [the child], and neither parent has been

able to do so. [The child] could not be returned to the care of a parent at this time or any time in the reasonably-near future without continuing to be a child in need of supervision and requiring the oversight of the court and the [DHS] to assure his safety. He would continue to be at imminent risk of harm to his health, safety, and welfare if in the care of either his mother or father due to drug use, untreated mental health issues, criminal activity, unsafe associates and lack of safe, stable, drug free housing. Nothing in the evidence indicates that this is likely to change in the foreseeable future.

Having reviewed the record de novo, we agree. The State proved by clear and convincing evidence that grounds for termination exist under section 232.116(1)(h).

On appeal, the father also argues "[a]n additional period of rehabilitation should be granted to allow [him] to prove he is capable of caring for [the child]." He asserts a few more months would give him more time to prove he can provide for the child and keep him safe, and the child would suffer no ill effects. As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for

reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the child must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. As pointed out by the juvenile court, the father has been given more than ample time to address his adult issues and demonstrate that he could provide a safe, stable, drug free home for the child, and he was not able to do so. We agree with the court's conclusion that "[n]othing in the evidence indicates that this is likely to change in the foreseeable future." Any additional time in limbo would not be in the child's best interests.

The father also argues that termination is not in the best interests of the child due to the bond between the child and the father. While the record discloses a bond between the child and the father, the record indicates termination is in the child's best interests. The child has been removed from parental custody for a significant portion of his young life. He has done well developmentally and physically in his foster home and is "a happy, healthy, active toddler." He is bonded to his foster parents. The child is in need of permanency and security that adoption can provide him.

As an aside on appeal, the father claims the DHS should have given him more visits with less supervision. There is nothing in the record to suggest the father requested additional visitation or modification of the existing visitation schedule. He has not preserved this claim for review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

Accordingly, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**